## Smilie's Estate.

1. In Pennsylvania, the husband has the power to assign his wife's choses in action for a valuable consideration, whether they be vested or contingent. See also Webb's Appeal, 9 *Harris* 248.

2. Land was devised to trustees to receive the rents during the life of the testator's son, and after his death to sell and divide the proceeds among the grandchildren of the testator then living, and the issue of such as may be dead. In the year 1846, during the life of the son, whose death happened in 1851, one of his daughters and her husband, by deed duly acknowledged before a justice of the peace, for a valuable consideration granted and sold all their right and interest in the estate, whether "in land or money;" and after the death of the son the land was sold:

It was *Held*, that the interest of the wife *being a mere chose in action* passed by the said deed or assignment.

3. Even though the Act of 1848, to secure the rights of married women, might operate on contingent interests originating before its enactment but vesting afterwards, the principle of estoppel will still prevent the wife from claiming against the assignee.

APPEAL from the decree of the Orphans' Court of *Fayette county*.

This was an appeal by William H. Harper, administrator, &c., of John McBurney, deceased, from the decree of the Orphans' Court of Fayette county, decreeing distribution of a portion of the proceeds of real estate, formerly of John Smilie, deceased. John Smilie died in 1812, leaving a will dated the 19th November, 1809. The clause of it which was the subject of consideration in this matter, was to the following effect. After the death of his wife, he gave and bequeathed 365 acres of land and allowance to three persons and their heirs, to receive the rents, &c., in trust for Robert Smilie, the son of the testator, during his natural life, and he added "after the death of the said Robert Smilie, I do hereby request, order, and empower the said (the trustees, naming them), and the survivors or survivor of them and the executors and administrators of such survivor, to sell and convey in fee simple, all the tract of land aforesaid, and upon the receipt of the money arising from such sale, to pay and divide the same equally to and among my grandchildren then living, and the issue of such as may be dead; such part thereof only to be paid and divided equally among such issue as would have been coming hereby to the father or mother of such issue, had he or she been living."

Robert Smilie died on 16th October, 1851, leaving several children, one of whom was Mary, intermarried with George Shallenberger; several other grandchildren of the testator were living.

At the death of Robert Smilie, the trustees were all dead; and

[Smilie's Estate.]

by an Act of Assembly, approved on 10th April, 1852, the Orphans' Court of Fayette county was authorized to appoint a trustee to make sale of the estate devised. The property was sold for $11,064.

In the lifetime of Robert Smilie, George Shallenberger and Mary his wife, by an instrument under seal, bearing date the 27th March, 1846, in consideration of $400, granted, sold, released, and confirmed to John McBurney all the right, title, interest, &c., "let the same be in land or money," whatsoever, of them the said Shallenberger and Mary his wife, in law or equity, in the undivided eleventh part of the aforesaid tract of land; and assigned to him all power and right to receive in land or money, &c., with a clause of general warranty.

The execution of the deed was separately acknowledged by the wife, and was recorded in May, 1847. An auditor was appointed to report distribution. Before him, on the part of Mrs. Shallenberger, objection was made to the appropriation to McBurney's claim on the ground that the money was not payable until after the death of Robert Smilie; and that prior thereto, by legislative enactment, the acknowledgment by a married woman was required to be made before a judge of the Court; and as such requirement had not been complied with in this case, it was claimed that Mrs. Shallenberger was entitled to the money.

The auditor reported in favor of the payment to the administrator of McBurney's estate of $400, with interest thereon since the 27th March, 1846, the date of the assignment; and of the balance of the share for the benefit of Mrs. Shallenberger.

Exceptions to the report were filed on the part of Mary Shallenberger, claiming: 1. That the report should have been in her favor to the *whole* amount of her share of the fund. That being a *feme covert* at the date of the assignment, she was unable to make any contract; and that the legacy being *contingent*, she had no interest that was assignable. 2. That whether the fund was vested or contingent, it was a chose in action; that her husband could not have reduced it into possession before the passage of the Act of 1848 (it not being then payable), and that it belonged exclusively to her.

On the part of Harper, the administrator, exception was taken on the ground that the whole share and interest of Mary Shallenberger and her husband in the fund, should have been awarded to him in pursuance of the assignment.

The Court considered that the interest of the wife was *a vested* interest, but not being payable till the death of the tenant for life, was not reducible into possession till the happening of that event. That by the transfer, McBurney acquired nothing more than the claim which might accrue to the husband by the deter-

[Smilie's Estate.]

mination of the life estate *during the coverture;* and but for the
Act of 1848, no new assignment might, in that event, be neces-
sary. But the opinion was expressed that the Act of 1848 secured
the money to the wife, there having been no acknowledgment by
her as required by that Act. The whole share was decreed to be
paid to Mrs. Shallenberger.

To the decree exception was taken on the part of the admi-
nistrator.

*J. B.* and *J. A. Howell,* for appellant.—That the interest in Mrs.
Shallenberger was *vested,* was cited 12 *Ser. & R.* 113; King *v.*
King, 1 *W. & Ser.* 205. That the assignment in question passed
it, reference was made to Siter's Case, 4 *Rawle* 468. Although
in law a husband cannot assign a possibility of his wife or his own,
yet a Court of Equity will support such assignment for a valuable
consideration: 1 *Atkyns* 280; Siter's Case, p. 483. Reference also
made to 7 *W. & Ser.* 168, Shuman *v.* Reigart; 2 *Barr* 71, Woel-
per's Appeal; 4 *Barr* 389, Coale *v.* Smith; 5 *Whart.* 138; 10
*Watts* 54; 6 *W. & Ser.* 290.

If in 1846, when the assignment in question was made, the hus-
band had the power to dispose of this chose in action, the Act of
1848 will not disturb the assignment.

*Ewing* and *Fuller,* for appellee.—It was contended that the
legacy was *contingent*: *Preston on Leg.* 68; 8 *Vesey* 547, Elwin
*v.* Elwin; 8 *Watts* 144; 9 *Id.* 403; 1 *Harris* 503, Seibert's
Appeal. The authorities cited on part of appellant are either of
choses presently reducible into possession, or of *vested* reversionary
interests; and that the power of assignment in the husband extends
only to his wife's *vested* reversionary interests, was cited 10 *Coke*
50; 5 *Coke* 70; *Co. Litt.* 343 b; 2 *Coke* 51 b; *Yelv.* 85; *Cro. Eliz.*
841; *Co. Litt.* 46 b; Perdew *v.* Jackson, 1 *Russ.* 1; Honner *v.*
Morton, 2 *Mad.* 16; 2 *Story Eq.* § 1413. The Act of 1848
having passed before the death of *Robert* Smilie, and prior to the
vesting of the legacy, the rights of the parties are thereby placed
in the same situation as though Shallenberger, the husband, had
died at the date of that Act; and the wife is, therefore, entitled
absolutely to the whole fund.

The opinion of the Court was delivered by

LEWIS, J.—Under the view which we take of this case, it is not
necessary to decide whether the legacy to Mary Shallenberger
was vested at the death of the testator or not. It is certain that
at the death of Robert Smilie on the 16th October, 1851, it was
not only vested but was due and payable, according to the terms
of her grandfather's will. But before it became payable, to wit,

on the 27th March, 1846, she had joined her husband in a deed, duly acknowledged, by which the legacy was assigned for a valuable consideration to John McBurney, whose administrator claims the money. The will gave her no interest in the land, *as land*. The devise to trustees to sell and distribute the proceeds, gave her nothing more than a *chose in action*, which her husband might reduce into possession by an assignment for value without her consent.

In Perdew *v.* Jackson, 1 *Russ.* 70, in Hornsby *v.* Lee, and in some other cases, it was thought that a husband could not bar the wife's right of survivorship in a reversionary interest, by an assignment of it, because such interest was not presently reducible into possession. But there are numerous English authorities the other way: *Gilb. Eq. Rep.* 88; 2 *Atk.* 207; 1 *Atk.* 280; 2 *Atk.* 549; 2 *P. Wms.* 608; 3 *P. Wms.* 200; *Dicken's Rep.* 491; 1 *Bro. Ch.* 51; 1 *P. Wms.* 459, note; 12 *Ves.* 175; 9 *Ves.* 100; 2 *Russ. & Mylne* 355. Mr. Butler in his note *Cb. Litt.* 351 a, note 304, edition of 1794, lays down the doctrine that the wife's *possible* or *contingent* interest in a term of years, if it is a *legal* interest, may be assigned by the husband, unless perhaps where the possibility or contingency is of such a nature that it *cannot* happen during the husband's lifetime. In Grey *v.* Kentish, 1 *Atk.* 280, Lord Chancellor Hardwicke held, that although a husband cannot assign *in law* a possibility of the wife, nor a possibility of *his own*, yet *equity* will support such an assignment for a valuable consideration. And in 1831, in Donne *v.* Hart, 2 *Russ. & Mylne* 360, Sir John Leach, Master of the Rolls, decided, that "it was clear that a wife's *contingent* interest in a term may be sold by the husband, and there is no difference *in equity*, between the *legal* interests in a term and the *trusts* of a term." But whatever conflict of authority may exist elsewhere on this question, the able opinion of the late Chief Justice GIBSON, in Siter's Case, 4 *Rawle* 483, has fully demonstrated that a contract of assignment for a valuable consideration, entered into by a *feme*, through the agency of her legal representative (her husband), binds her in a Court of Equity, and that the distinction attempted between *vested* and *contingent* interests, has no place in the law of Pennsylvania: 4 *Rawle* 482. The husband is considered the legal representative of the wife in all matters which relate to her *choses in action*, whether contingent or otherwise, and an assignment of them is regarded as *her* contract through his agency, by virtue of the power conferred upon him with her consent, by the marriage. It is certainly true that where a *chose* in action is not due and payable, the husband cannot reduce it into possession by action; but this arises not from any defect in his marital power, but from the nature of the thing itself, which prevents her as well as himself from

M

[Smilie's Estate.]

demanding it by action before it is payable. If the *feme* were *sole*, her claim would be subject to the same impediment. This is no reason why she cannot transfer her right, such as it is, to another. She could undoubtedly do so if sole, whether the demand be vested or contingent; and such assignment would, in equity, estop her from claiming the money against her own assignee. As her husband is clothed with her power over such interests, her assignment through his agency for a valuable consideration, is as binding upon her as if made by herself. The principle which governs in this and kindred questions is that every act done by a representative under competent authority, is binding upon those by whom or for whose benefit the authority was conferred.

In Honner *v.* Morton, 3 *Russ.* 65, Lord Chancellor Lyndhurst declared that equity considers an assignment by the husband as amounting to an agreement that he will reduce the property into possession, for the benefit of the assignee. Where the husband has the power to do so, equity considers it as done. Where he has not the power, the assignment remains inoperative until by subsequent events he comes into a situation to be able to reduce the property into possession, and then his previous assignment will operate on his actual situation, and the property will be transferred." This is in accordance with the familiar principle that subsequent acquisitions feed the estoppel of grants made before the right had accrued to the grantors; or, in other words, where a party makes a conveyance without title, if he afterwards acquire one, it shall enure to the benefit of his grantee. The assignment in this case having been made by the wife through the agency of her husband, the vesting of the interest afterwards enures to the benefit of her assignee. Conceding that the Act of 1848 might operate on contingent interests, originating before its enactment but vesting afterwards, the principle of estoppel applies with equal force. Having once received the proceeds, she shall not also take the thing itself.

It is ordered that the decree of the Court below be reversed, so far as it adjudges to Mary Shallenberger any portion of the money covered by the assignment to John McBurney. And it is further ordered that the share and interest of Mary Shallenberger in the proceeds of the estate of John Smilie, deceased, reported by the auditor, be paid to William H. Harper, administrator, &c., of the said John McBurney, deceased, in pursuance of the assignment of 27th March, 1846, from the said George Shallenberger and Mary Shallenberger, his wife, to the said John McBurney, deceased.